## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN DOE,<br><br>               Plaintiff,<br><br>     v.<br><br>UNIVERSITY OF SCRANTON,<br><br>               Defendant | CASE NO. _____ |

## COMPLAINT

### PARTIES

1.      Plaintiff, John Doe, is an adult individual and citizen of the State of New Jersey who resides at █████████████████████ Plaintiff is a recent graduate of Defendant, University of Scranton, having graduated in May 2019.

2.      Defendant, University of Scranton, is a private university located at 800 Linden Street, Scranton, PA 18510.

### JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject-matter jurisdiction over Plaintiff's claims as those claims present a federal question.

4.      This Court has jurisdiction over Defendant because Defendant's contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and

substantial justice, satisfying the standard set forth by the Supreme Court of the

United States in <u>International Shoe Company v. State of Washington</u>, 326 U.S. 310

(1945), and its progeny.

  5.  Venue is proper under 28 U.S.C. §§ 1391(b)(1)-(2) because the

Defendant resides in and/or conducts business in this judicial district, and because a

substantial part of the acts and/or omissions giving rise to the claims set forth herein

occurred in this judicial district.

**COUNT I:**
**HARASSMENT/HOSTILE ENVIRONMENT BASED ON SEXUAL**
**ORIENTATION/GENDER STEREOTYPING, IN VIOLATION OF**
**TITLE IX OF THE EDUCATION AMENDMENTS OF 1972,**
**20 U.S.C. § 1681, <u>et seq.</u>**
**<u>(Plaintiff, John Doe v. Defendant, University of Scranton)</u>**

  6.  All of the foregoing paragraphs are hereby incorporated by reference

as if the same were more fully set forth at length herein.

  7.  At all times relevant hereto, Plaintiff was an undergraduate student at

the Defendant University and, in order to attend, Plaintiff paid Defendant a total of

approximately $ 138,612.85 in private tuition and related expenses, and, in addition,

Plaintiff took out a total of approximately $ 20,209.41 in student loan debt, during

which time Defendant turned a blind eye while Plaintiff was subjected to bullying,

harassment, and physical abuse on account of Plaintiff's sexual orientation/gender

stereotyping, depriving Plaintiff of equal educational opportunities.

8.   Upon information and belief, at all times relevant hereto, Defendant was subject to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., because Defendant received federal financial assistance for its educational programs and activities.

9.   Plaintiff was subjected to a hostile environment/harassment based on sexual orientation/gender stereotyping – based on the fact that Plaintiff intimately associates with those of the same sex (male), or, in other words, based on the fact that he is gay.  The facts which support this are as follows:

      a.   As a matter of policy, Defendant provides that Defendant will supply a "safe place" and "voice" for students who are LGBTQ+, "while holding true and dedicated to Catholic teaching . . . ."  Defendant's policy and practice of not being fully LGBT-inclusive fosters a campus culture of bigotry, and a hostile environment as described more fully below.

      b.   Plaintiff believes during the Second Semester of Freshman year, Plaintiff believes in or around 2016, Plaintiff met with Ms. Karen Marx, Administrative Assistant in the Academic Advising Center, who told Plaintiff that Ms. Marx knew Plaintiff's sister who at the time was presently attending the University of Scranton.  Upon information and belief, Plaintiff's sister

3

informed Ms. Marx that her brother, the Plaintiff, might be gay, because Plaintiff's sister saw Plaintiff walking together with someone of the same sex.  Ms. Marx informed Plaintiff that Ms. Marx felt there might be occasions where some people might have issues with Plaintiff being gay, or words to that effect.

c.   During Fall Semester 2018, Plaintiff lived in an off-campus housing unit located at 423 Taylor Avenue, Scranton, PA 18510, with four (4) male students.

d.   Shortly after moving into the housing unit in August 2018, and including in or around October or November 2018, male student and Plaintiff's roommate, Shawn Mallon, who, upon information and belief, does not identify as gay, would frequently make derogatory comments like, "You're gay," to other male students (not the Plaintiff); commented that other students "look gay"; and would also frequently make derogatory comments in general like, "That's gay."

e.   Plaintiff recalls, on one occasion, but Plaintiff does not recollect the specific date, that Plaintiff stated to Mallon, "Well, I'm gay," responding to Mallon stating, "That's gay," about something.

Plaintiff was rebuffing or telling Mallon not to say that being gay was a bad thing, because the Plaintiff is gay.

f.   Shortly after moving into the housing unit in August 2018, and continuing thereafter on a frequent basis, Mallon ostracized Plaintiff and treated him with aversion by frequently speaking down to Plaintiff in a denigrating manner, and disagreeing with or debating Plaintiff, while Plaintiff observed that Mallon did not treat similarly-situated students/roommates, who were not openly gay, the same way, including Dan, Lou, or Gavin.  In addition, a student, Billy, who was not openly gay, often joined the group, although Billy did not live in the off-campus house. However, Mallon would not speak to or treat Billy in the same manner as Plaintiff.

g.   After Plaintiff moved into the housing unit in August 2018, although Plaintiff does not recall the specific date, Plaintiff recollects that some of the students were driving together to get food, and Mallon started speaking in a disrespectful manner toward Plaintiff.  Plaintiff recalls that another student, Dan, asked Mallon whether Mallon was speaking that way to Dan. Mallon responded no, that he was speaking to Plaintiff like that.

Mallon felt it was appropriate to speak to and treat Plaintiff in a denigrating manner because Plaintiff is gay.

h.    After Plaintiff moved into the housing unit in August 2018, although Plaintiff does not recall the specific date, Plaintiff recollects that some of the students were planning to go out together for the night, and Mallon stated to Plaintiff in a disrespectful manner, "Why don't you bring a girl over?", or words to that effect.  However, Mallon knew that Plaintiff is gay, in other words, that Plaintiff intimately associates with those of the _same_ sex (male).  Mallon said this to embarrass Plaintiff and make Plaintiff feel different from the others, as if Plaintiff did not fit in, because Plaintiff is gay.

i.    After Plaintiff moved into the housing unit in August 2018, although Plaintiff does not recall the specific date, Plaintiff recollects that Mallon commented negatively about a female student's appearance, and after Plaintiff objected, Mallon said to Plaintiff in a disrespectful manner, "You don't even like girls," or words to that effect.

j.    On November 1, 2018, Mallon sent text messages referring to Plaintiff, in a group chat where the others could see, stating to

Plaintiff, among other things, "you're [*sic.*] below me intellectually but you're [*sic.*] probably used to being in that position," "just remember you got bent over and anal fucked by facts just like Derek bent you over then kicked you too [*sic.*] the corner," and "Derek took any respect you had for yourself." Derek is Plaintiff's ex-boyfriend.

k.     In or around November 2018, after Plaintiff received the above text messages from Mallon, Plaintiff complained about his living situation to Ms. Karen Marx, Administrative Assistant in Defendant's Academic Advising Center. Plaintiff recollects that he specifically showed Ms. Marx the text messages from Mallon. Ms. Marx responded to Plaintiff by reminding him that Ms. Marx and Plaintiff had discussed in Plaintiff's Freshman year that some people might have issues with Plaintiff being gay, and said, "You only have to live with him one more semester after this," or words to that effect. Plaintiff did not feel his complaint was taken seriously.

l.     In or around November 2018, after Plaintiff received the above text messages from Mallon, and after Plaintiff spoke with Ms. Marx, Plaintiff then took his complaint to Mr. Kevin Stanford,

Academic Advisor.  Plaintiff recollects that Mr. Stanford said, among other things, "Don't let it get to you," or words to that effect.  Plaintiff still did not feel his complaints were being taken seriously.

m.   Defendant, including Ms. Marx and Mr. Stanford, did not take sufficient steps to prevent, correct, and remedy the harassing situation.  Defendant, including Ms. Marx and Mr. Stanford, instead were deliberately indifferent and turned a blind eye to the situation.

n.   Plaintiff further recollects that Mallon would frequently speculate about other students' sexual orientation, in a disparaging manner, including in or around November 2018, around the time of Mallon's text messages.

o.   In or around November 2018, Plaintiff recollects around the time of Mallon's text messages, Mallon stated, in a disparaging manner, that another male student would have sex with someone "not caring whether they were male or female," or words to that effect.

p.   On or about December 15, 2018, Shawn Mallon physically attacked/assaulted Plaintiff.  During the attack, Mallon called

Plaintiff a "faggot" and stated to Plaintiff, among other things,

"I'm gonna murder you in your sleep," or words to that effect.

Plaintiff reported the incident to Defendant and the police.

10.     Plaintiff was subjectively offended by the above conduct, the above conduct is objectively offensive, and the above-described harassment was severe and/or pervasive.

11.     In addition to previously altering Ms. Marx and Mr. Stanford to the discrimination/harassment, and alerting the police about the assault, Plaintiff lodged a complaint about the discrimination, harassment, and assault on account of Plaintiff's sexual orientation with Lauren Rivera, Dean of Students, in or around December 2018 and January 2019.  Plaintiff spoke with Ms. Rivera multiple times during this time period. At *no* time did Ms. Rivera determine that the complained-of conduct actually violated Defendant's *sexual* harassment policy and the law against *sex* discrimination or harassment.

12.     Plaintiff's mother also followed up with Dean Rivera in February 2019 after Plaintiff did not receive a satisfactory response.  Upon information and belief, Dean Rivera stated to Plaintiff's mother, who subsequently told Plaintiff, "Pennsylvania doesn't recognize this as a hate crime," or words to that effect, by which Dean Rivera meant Pennsylvania did not prohibit hate crimes based on *sexual orientation* criminally.  Ms. Rivera did not determine that the complained-of

conduct violated Defendant's _sexual_ harassment policy and the law against _sex_ discrimination or harassment.

13.    In or around December 2018 and January 2019, Plaintiff also verbally spoke with and e-mailed Elizabeth Garcia, Executive Director, Office of Equity and Diversity.  However, upon information and belief, at _no_ time did Defendant independently determine that the complained-of conduct actually violated Defendant's _sexual_ harassment policy or Title IX.

14.    Even if the police conducted an investigation into Plaintiff's assault, this did not satisfy the Defendant's independent duty under Title IX to investigate, correct, and remedy the discrimination/harassment.  The standard for a criminal conviction is "reasonable doubt," which is a much higher standard than the "preponderance of the evidence" standard applicable under Title IX.

15.    Plaintiff observed the assailant walking around campus, in the DeNaples Center, in the dining hall/cafeteria, and at the gym, thereafter.  Plaintiff regularly avoided the DeNaples Center, eating in the dining hall/cafeteria, and going to the gym, because he saw the assailant there, and out of fear Plaintiff would continue to encounter the assailant there moving forward.

16.    Even after a no-contact order was instituted between Plaintiff and the assailant, in or around February 2019, Plaintiff stated to Dean Rivera that Plaintiff continued to encounter the assailant around campus.  Plaintiff recalls saying, for

example, that Plaintiff felt like he could not go to the gym because he did not know when the harasser would be there.  Dean Rivera stated to Plaintiff that there was nothing she could do about that.

17.    At no time did Defendant provide Plaintiff any information about the outcome or result of any investigation conducted by Defendant, and, upon information and belief, to Plaintiff's knowledge, no hearing was ever conducted by Defendant, at which Plaintiff could have addressed these matters.

18.    Upon information and belief, Defendant did not discipline the harasser under the Defendant's policy that prohibited sex discrimination and sexual harassment pursuant to Title IX.

19.    Defendant unfairly disadvantaged Plaintiff, the harassee, instead of the harasser, in that Plaintiff moved out of the off-campus unit and back onto campus, and Defendant recalculated Plaintiff's financial aid package, which required Plaintiff to pay *more* for room and board for Spring Semester 2019, than for the off-campus housing unit in Fall Semester 2018.  The move also caused Plaintiff to incur relocation expenses, out-of-pocket expenses, and suffer inconvenience.  Upon information and belief, Mallon did *not* move out of the house.

20.    Plaintiff experienced, and continues to experience, pain and suffering, mental anguish, humiliation, embarrassment, and emotional distress, on account of

11

the abuse Plaintiff suffered, and for which Plaintiff has incurred additional expenses in attending professional counseling.

21.     Defendant is not fully LGBT-inclusive and intentionally discriminated against Plaintiff based on sex by permitting same-sex sexual harassment of Plaintiff because of his sexual orientation/gender stereotyping or because he is gay. Defendant subjected Plaintiff to disparate treatment based on sex as Defendant did not treat Plaintiff's complaints as seriously compared to a heterosexual female student, if she would have complained of the same behavior, for example, by treating her complaint as one of sexual harassment.

**WHEREFORE**, Plaintiff, John Doe, hereby demands judgment in his favor and against Defendant, University of Scranton, including damages for any out-of-pocket expenses; the difference between the amounts Plaintiff paid to live on campus following the assault, as opposed to off-campus; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, and emotional distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendant adopt, post, and disseminate a policy stating that, moving forward, all complaints of sexual-orientation discrimination will be processed as complaints of sex discrimination under the University's Title IX grievance procedure; and a policy stating that, moving

12

forward, Defendant will first require or encourage the harasser, rather than the harassee, to move residences.

## COUNT II:
### DIFFERENT TERMS, CONDITIONS, OR PRIVILEGES RELATING TO THE PROVISION OF FACILITIES AND SERVICES, BASED ON SEXUAL ORIENTATION/GENDER STEREOTYPING, IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681, et seq.
### (Plaintiff, John Doe v. Defendant, University of Scranton)

22.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

23.    Plaintiff was subjected to different terms, conditions, or privileges relating to the provision of facilities and services, on account of Plaintiff's sexual orientation/gender stereotyping. The facts which support this are as follows:

   a.    As a matter of policy, Defendant provides that Defendant will supply a "safe place" and "voice" for students who are LGBTQ+, "while holding true and dedicated to Catholic teaching . . . ." Defendant's policy and practice of not being fully LGBT-inclusive fosters a campus culture of bigotry, and a hostile environment as described more fully below.

   b.    Defendant unfairly disadvantaged Plaintiff, the harassee, instead of the harasser, in that Plaintiff moved out of the off-campus unit and back onto campus, and Defendant recalculated

13

Plaintiff's financial aid package, which required Plaintiff to pay
more for room and board for Spring Semester 2019, than for the
off-campus housing unit in Fall Semester 2018.  Upon
information and belief, Mallon did not move out of the house.

c.  Plaintiff observed the assailant walking around campus, in the
DeNaples Center, in the dining hall/cafeteria, and at the gym,
thereafter.  Plaintiff regularly avoided the DeNaples Center,
eating in the dining hall/cafeteria, and going to the gym, because
he saw the assailant there, and out of fear Plaintiff would
continue to encounter the assailant there moving forward.

d.  Even after a no-contact order was instituted between Plaintiff
and the assailant, in or around February 2019, Plaintiff stated to
Dean Rivera that Plaintiff continued to encounter the assailant
around campus.  Plaintiff recalls saying, for example, that
Plaintiff felt like he could not go to the gym because he did not
know when the harasser would be there.  Dean Rivera stated to
Plaintiff that there was nothing she could do about that.

e.  At no time did Defendant provide Plaintiff any information
about the outcome or result of any investigation conducted by
Defendant, and, upon information and belief, to Plaintiff's

14

knowledge, no hearing was ever conducted by Defendant, at
which Plaintiff could have addressed these matters.

f.      Upon information and belief, Defendant did not discipline the
harasser under the Defendant's policy that prohibited sex
discrimination and sexual harassment pursuant to Title IX.

**WHEREFORE**, Plaintiff, John Doe, hereby demands judgment in his favor
and against Defendant, University of Scranton, including damages for any out-of-
pocket expenses; the difference between the amounts Plaintiff paid to live on
campus following the assault, as opposed to off-campus; compensatory damages for
pain and suffering, mental anguish, anxiety, depression, humiliation, and emotional
distress; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit;
and equitable/injunctive relief requiring that Defendant adopt, post, and disseminate
a policy stating that, moving forward, all complaints of sexual-orientation
discrimination will be processed as complaints of sex discrimination under the
University's Title IX grievance procedure; and a policy stating that, moving
forward, Defendant will first require or encourage the harasser, rather than the
harassee, to move residences.

## COUNT III:
### INTERFERENCE, COERCION, AND INTIMIDATION BASED ON SEXUAL ORIENTATION/GENDER STEREOTYPING, IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED BY THE FAIR HOUSING AMENDMENTS ACT OF 1988, 42 U.S.C. § 3617 [Sec. 818]
### (Plaintiff, John Doe v. Defendant, University of Scranton)

24.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

25.    Defendant violated Section 818 of the Fair Housing Act, 42 U.S.C. § 3617, by "threatening, intimidating, or interfering with" Plaintiff in his "enjoyment of a dwelling because of the . . . sex . . . of such person." 24 C.F.R. § 100.400(c)(2).  The facts which support this are as follows:

a.    As a matter of policy, Defendant provides that Defendant will supply a "safe place" and "voice" for students who are LGBTQ+, "while holding true and dedicated to Catholic teaching . . . ." Defendant's policy and practice of not being fully LGBT-inclusive fosters a campus culture of bigotry, and a hostile environment as described more fully below.

b.    Plaintiff believes during the Second Semester of Freshman year, Plaintiff believes in or around 2016, Plaintiff met with Ms. Karen Marx, Administrative Assistant in the Academic Advising Center, who told Plaintiff that Ms. Marx knew Plaintiff's sister

16

who at the time was presently attending the University of

Scranton.  Upon information and belief, Plaintiff's sister

informed Ms. Marx that her brother, the Plaintiff, might be gay,

because Plaintiff's sister saw Plaintiff walking together with

someone of the same sex.  Ms. Marx informed Plaintiff that Ms.

Marx felt there might be occasions where some people might

have issues with Plaintiff being gay, or words to that effect.

c.    During Fall Semester 2018, Plaintiff lived in an off-campus

housing unit located at 423 Taylor Avenue, Scranton, PA 18510,

with four (4) male students.

d.    Shortly after moving into the housing unit in August 2018, and

including in or around October or November 2018, male student

and Plaintiff's roommate, Shawn Mallon, who, upon

information and belief, does not identify as gay, would

frequently make derogatory comments like, "You're gay," to

other male students (not the Plaintiff); commented that other

students "look gay"; and would also frequently make derogatory

comments in general like, "That's gay."

e.    Plaintiff recalls, on one occasion, but Plaintiff does not recollect

the specific date, that Plaintiff stated to Mallon, "Well, I'm gay,"

17

responding to Mallon stating, "That's gay," about something. Plaintiff was rebuffing or telling Mallon not to say that being gay was a bad thing, because the Plaintiff is gay.

f.  Shortly after moving into the housing unit in August 2018, and continuing thereafter on a frequent basis, Mallon ostracized Plaintiff and treated him with aversion by frequently speaking down to Plaintiff in a denigrating manner, and disagreeing with or debating Plaintiff, while Plaintiff observed that Mallon did not treat similarly-situated students/roommates, who were not openly gay, the same way, including Dan, Lou, or Gavin.  In addition, a student, Billy, who was not openly gay, often joined the group, although Billy did not live in the off-campus house. However, Mallon would not speak to or treat Billy in the same manner as Plaintiff.

g.  After Plaintiff moved into the housing unit in August 2018, although Plaintiff does not recall the specific date, Plaintiff recollects that some of the students were driving together to get food, and Mallon started speaking in a disrespectful manner toward Plaintiff.  Plaintiff recalls that another student, Dan, asked Mallon whether Mallon was speaking that way to Dan.

18

Mallon responded no, that he was speaking to Plaintiff like that. Mallon felt it was appropriate to speak to and treat Plaintiff in a denigrating manner because Plaintiff is gay.

h.    After Plaintiff moved into the housing unit in August 2018, although Plaintiff does not recall the specific date, Plaintiff recollects that some of the students were planning to go out together for the night, and Mallon stated to Plaintiff in a disrespectful manner, "Why don't you bring a girl over?", or words to that effect.  However, Mallon knew that Plaintiff is gay, in other words, that Plaintiff intimately associates with those of the _same_ sex (male).  Mallon said this to embarrass Plaintiff and make Plaintiff feel different from the others, as if Plaintiff did not fit in, because Plaintiff is gay.

i.    After Plaintiff moved into the housing unit in August 2018, although Plaintiff does not recall the specific date, Plaintiff recollects that Mallon commented negatively about a female student's appearance, and after Plaintiff objected, Mallon said to Plaintiff in a disrespectful manner, "You don't even like girls," or words to that effect.

j.   On November 1, 2018, Mallon sent text messages referring to Plaintiff, in a group chat where the others could see, stating to Plaintiff, among other things, "you're [*sic.*] below me intellectually but you're [*sic.*] probably used to being in that position," "just remember you got bent over and anal fucked by facts just like Derek bent you over then kicked you too [*sic.*] the corner," and "Derek took any respect you had for yourself." Derek is Plaintiff's ex-boyfriend.

k.   In or around November 2018, after Plaintiff received the above text messages from Mallon, Plaintiff complained about his living situation to Ms. Karen Marx, Administrative Assistant in Defendant's Academic Advising Center.  Plaintiff recollects that he specifically showed Ms. Marx the text messages from Mallon.  Ms. Marx responded to Plaintiff by reminding him that Ms. Marx and Plaintiff had discussed in Plaintiff's Freshman year that some people might have issues with Plaintiff being gay, and said, "You only have to live with him one more semester after this," or words to that effect.  Plaintiff did not feel his complaint was taken seriously.

l.   In or around November 2018, after Plaintiff received the above text messages from Mallon, and after Plaintiff spoke with Ms. Marx, Plaintiff then took his complaint to Mr. Kevin Stanford, Academic Advisor.  Plaintiff recollects that Mr. Stanford said, among other things, "Don't let it get to you," or words to that effect.  Plaintiff still did not feel his complaints were being taken seriously.

m.   Defendant, including Ms. Marx and Mr. Stanford, did not take sufficient steps to prevent, correct, and remedy the harassing situation.  Defendant, including Ms. Marx and Mr. Stanford, instead turned a blind eye to the situation.

n.   Plaintiff further recollects that Mallon would frequently speculate about other students' sexual orientation, in a disparaging manner, including in or around November 2018, around the time of Mallon's text messages.

o.   In or around November 2018, Plaintiff recollects around the time of Mallon's text messages, Mallon stated, in a disparaging manner, that another male student would have sex with someone "not caring whether they were male or female," or words to that effect.

21

p.    On or about December 15, 2018, Shawn Mallon physically

attacked/assaulted Plaintiff.  During the attack, Mallon called

Plaintiff a "faggot" and stated to Plaintiff, among other things,

"I'm gonna murder you in your sleep," or words to that effect.

Plaintiff reported the incident to Defendant and the police.

26.    Plaintiff was subjectively offended by the above conduct, the above

conduct is objectively offensive, and the above-described harassment was severe

and/or pervasive.

27.    In addition to previously altering Ms. Marx and Mr. Stanford to the

discrimination/harassment, and alerting the police about the assault, Plaintiff lodged

a complaint about the discrimination, harassment, and assault on account of

Plaintiff's sexual orientation with Lauren Rivera, Dean of Students, in or around

December 2018 and January 2019.  Plaintiff spoke with Ms. Rivera multiple times

during this time period. At _no_ time did Ms. Rivera determine that the complained-of

conduct actually violated Defendant's _sexual_ harassment policy and the law against

_sex_ discrimination or harassment.

28.    Plaintiff's mother also followed up with Dean Rivera in February 2019

after Plaintiff did not receive a satisfactory response.  Upon information and belief,

Dean Rivera stated to Plaintiff's mother, who subsequently told Plaintiff,

"Pennsylvania doesn't recognize this as a hate crime," or words to that effect, by

which Dean Rivera meant Pennsylvania did not prohibit hate crimes based on _sexual orientation_ criminally.  Ms. Rivera did not determine that the complained-of conduct violated Defendant's _sexual_ harassment policy and the law against _sex_ discrimination or harassment.

29.    In or around December 2018 and January 2019, Plaintiff also verbally spoke with and e-mailed Elizabeth Garcia, Executive Director, Office of Equity and Diversity.  However, upon information and belief, at _no_ time did Defendant independently determine that the complained-of conduct actually violated Defendant's _sexual_ harassment policy or the Fair Housing Act.

30.    Even if the police conducted an investigation into Plaintiff's assault, this did not satisfy the Defendant's independent duty to investigate, correct, and remedy the discrimination/harassment.  The standard for a criminal conviction is "reasonable doubt," which is a much higher standard than the "preponderance of the evidence" standard applicable under the Fair Housing Act.

31.    At no time did Defendant provide Plaintiff any information about the outcome or result of any investigation conducted by Defendant, and, upon information and belief, to Plaintiff's knowledge, no hearing was ever conducted by Defendant, at which Plaintiff could have addressed these matters.

32.    Defendant intentionally discriminated against Plaintiff based on sex by unfairly disadvantaging or burdening Plaintiff, the harassee, instead of the harasser,

in that Plaintiff moved out of the off-campus unit and back onto campus, and Defendant recalculated Plaintiff's financial aid package, which required Plaintiff to pay *more* for room and board for Spring Semester 2019, than for the off-campus housing unit in Fall Semester 2018. The move also caused Plaintiff to incur relocation expenses, out-of-pocket expenses, and suffer inconvenience. Upon information and belief, Mallon did *not* move out of the house.

33.    Defendant is not fully LGBT-inclusive and intentionally discriminated against Plaintiff based on sex by permitting same-sex sexual harassment of Plaintiff because of his sexual orientation/gender stereotyping or because he is gay. Defendant subjected Plaintiff to disparate treatment based on sex as Defendant did not treat Plaintiff's complaints as seriously compared to a heterosexual female student, if she would have complained of the same behavior, for example, by treating her complaint as one of sexual harassment.

**WHEREFORE**, Plaintiff, John Doe, hereby demands judgment in his favor and against Defendant, University of Scranton, including damages for any out-of-pocket expenses; the difference between the amounts Plaintiff paid to live on campus following the assault, as opposed to off-campus; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendant adopt,

post, and disseminate a policy stating that, moving forward, all complaints of

sexual-orientation discrimination will be processed as complaints of sex

discrimination under the University's existing non-discrimination policy, whether

the conduct occurred on or off-campus; and a policy stating that, moving forward,

Defendant will first require or encourage the harasser, rather than the harassee, to

move residences.

**COUNT IV:**
**HARASSMENT/HOSTILE ENVIRONMENT BASED ON SEXUAL**
**ORIENTATION/GENDER STEREOTYPING,**
**IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE**
**CIVIL RIGHTS ACT OF 1968, AS AMENDED BY THE FAIR HOUSING**
**AMENDMENTS ACT OF 1988, 42 U.S.C. § 3604(b) [Sec. 804(b)]**
**(Plaintiff, John Doe v. Defendant, University of Scranton)**

34.     All of the foregoing paragraphs are hereby incorporated by reference

as if the same were more fully set forth at length herein.

35.     Plaintiff lived in an off-campus housing accommodation which

constitutes a rental or dwelling under the Fair Housing Act, Title VIII of the Civil

Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988.

36.     Plaintiff was subjected to a hostile environment/harassment based on

Plaintiff's sexual orientation/gender stereotyping – based on the fact that Plaintiff

intimately associates with those of the same sex (male), or, in other words, based on

the fact that he is gay. The facts which support this are as follows:

a.  As a matter of policy, Defendant provides that Defendant will supply a "safe place" and "voice" for students who are LGBTQ+, "while holding true and dedicated to Catholic teaching . . . ." Defendant's policy and practice of not being fully LGBT-inclusive fosters a campus culture of bigotry, and a hostile environment as described more fully below.

b.  Plaintiff believes during the Second Semester of Freshman year, Plaintiff believes in or around 2016, Plaintiff met with Ms. Karen Marx, Administrative Assistant in the Academic Advising Center, who told Plaintiff that Ms. Marx knew Plaintiff's sister who at the time was presently attending the University of Scranton.  Upon information and belief, Plaintiff's sister informed Ms. Marx that her brother, the Plaintiff, might be gay, because Plaintiff's sister saw Plaintiff walking together with someone of the same sex.  Ms. Marx informed Plaintiff that Ms. Marx felt there might be occasions where some people might have issues with Plaintiff being gay, or words to that effect.

c.  During Fall Semester 2018, Plaintiff lived in an off-campus housing unit located at 423 Taylor Avenue, Scranton, PA 18510, with four (4) male students.

d.   Shortly after moving into the housing unit in August 2018, and including in or around October or November 2018, male student and Plaintiff's roommate, Shawn Mallon, who, upon information and belief, does not identify as gay, would frequently make derogatory comments like, "You're gay," to other male students (not the Plaintiff); commented that other students "look gay"; and would also frequently make derogatory comments in general like, "That's gay."

e.   Plaintiff recalls, on one occasion, but Plaintiff does not recollect the specific date, that Plaintiff stated to Mallon, "Well, I'm gay," responding to Mallon stating, "That's gay," about something. Plaintiff was rebuffing or telling Mallon not to say that being gay was a bad thing, because the Plaintiff is gay.

f.   Shortly after moving into the housing unit in August 2018, and continuing thereafter on a frequent basis, Mallon ostracized Plaintiff and treated him with aversion by frequently speaking down to Plaintiff in a denigrating manner, and disagreeing with or debating Plaintiff, while Plaintiff observed that Mallon did not treat similarly-situated students/roommates, who were not openly gay, the same way, including Dan, Lou, or Gavin.  In

27

addition, a student, Billy, who was not openly gay, often joined the group, although Billy did not live in the off-campus house. However, Mallon would not speak to or treat Billy in the same manner as Plaintiff.

g.    After Plaintiff moved into the housing unit in August 2018, although Plaintiff does not recall the specific date, Plaintiff recollects that some of the students were driving together to get food, and Mallon started speaking in a disrespectful manner toward Plaintiff. Plaintiff recalls that another student, Dan, asked Mallon whether Mallon was speaking that way to Dan. Mallon responded no, that he was speaking to Plaintiff like that. Mallon felt it was appropriate to speak to and treat Plaintiff in a denigrating manner because Plaintiff is gay.

h.    After Plaintiff moved into the housing unit in August 2018, although Plaintiff does not recall the specific date, Plaintiff recollects that some of the students were planning to go out together for the night, and Mallon stated to Plaintiff in a disrespectful manner, "Why don't you bring a girl over?", or words to that effect. However, Mallon knew that Plaintiff is gay, in other words, that Plaintiff intimately associates with

28

those of the *same* sex (male).  Mallon said this to embarrass

Plaintiff and make Plaintiff feel different from the others, as if

Plaintiff did not fit in, because Plaintiff is gay.

i.   After Plaintiff moved into the housing unit in August 2018,

although Plaintiff does not recall the specific date, Plaintiff

recollects that Mallon commented negatively about a female

student's appearance, and after Plaintiff objected, Mallon said to

Plaintiff in a disrespectful manner, "You don't even like girls,"

or words to that effect.

j.   On November 1, 2018, Mallon sent text messages referring to

Plaintiff, in a group chat where the others could see, stating to

Plaintiff, among other things, "you're [*sic.*] below me

intellectually but you're [*sic.*] probably used to being in that

position," "just remember you got bent over and anal fucked by

facts just like Derek bent you over then kicked you too [*sic.*] the

corner," and "Derek took any respect you had for yourself."

Derek is Plaintiff's ex-boyfriend.

k.   In or around November 2018, after Plaintiff received the above

text messages from Mallon, Plaintiff complained about his living

situation to Ms. Karen Marx, Administrative Assistant in

Defendant's Academic Advising Center.  Plaintiff recollects that he specifically showed Ms. Marx the text messages from Mallon.  Ms. Marx responded to Plaintiff by reminding him that Ms. Marx and Plaintiff had discussed in Plaintiff's Freshman year that some people might have issues with Plaintiff being gay, and said, "You only have to live with him one more semester after this," or words to that effect.  Plaintiff did not feel his complaint was taken seriously.

l.    In or around November 2018, after Plaintiff received the above text messages from Mallon, and after Plaintiff spoke with Ms. Marx, Plaintiff then took his complaint to Mr. Kevin Stanford, Academic Advisor.  Plaintiff recollects that Mr. Stanford said, among other things, "Don't let it get to you," or words to that effect.  Plaintiff still did not feel his complaints were being taken seriously.

m.    Defendant, including Ms. Marx and Mr. Stanford, did not take sufficient steps to prevent, correct, and remedy the harassing situation.

n.    Plaintiff further recollects that Mallon would frequently speculate about other students' sexual orientation, in a

disparaging manner, including in or around November 2018, around the time of Mallon's text messages.

o. In or around November 2018, Plaintiff recollects around the time of Mallon's text messages, Mallon stated, in a disparaging manner, that another male student would have sex with someone "not caring whether they were male or female," or words to that effect.

p. On or about December 15, 2018, Shawn Mallon physically attacked/assaulted Plaintiff. During the attack, Mallon called Plaintiff a "faggot" and stated to Plaintiff, among other things, "I'm gonna murder you in your sleep," or words to that effect. Plaintiff reported the incident to Defendant and the police.

37. Plaintiff was subjectively offended by the above conduct, the above conduct is objectively offensive, and the above-described harassment was severe and/or pervasive.

38. In addition to previously altering Ms. Marx and Mr. Stanford to the discrimination/harassment, and alerting the police about the assault, Plaintiff lodged a complaint about the discrimination, harassment, and assault on account of Plaintiff's sexual orientation with Lauren Rivera, Dean of Students, in or around December 2018 and January 2019. Plaintiff spoke with Ms. Rivera multiple times

during this time period. At *no* time did Ms. Rivera determine that the complained-of

conduct actually violated Defendant's *sexual* harassment policy and the law against

*sex* discrimination or harassment.

39.    Plaintiff's mother also followed up with Dean Rivera in February 2019

after Plaintiff did not receive a satisfactory response.  Upon information and belief,

Dean Rivera stated to Plaintiff's mother, who subsequently told Plaintiff,

"Pennsylvania doesn't recognize this as a hate crime," or words to that effect, by

which Dean Rivera meant Pennsylvania did not prohibit hate crimes based on

*sexual orientation* criminally.  Ms. Rivera did not determine that the complained-of

conduct violated Defendant's *sexual* harassment policy and the law against *sex*

discrimination or harassment.

40.    In or around December 2018 and January 2019, Plaintiff also verbally

spoke with and e-mailed Elizabeth Garcia, Executive Director, Office of Equity and

Diversity.  However, upon information and belief, at *no* time did Defendant

independently determine that the complained-of conduct actually violated

Defendant's *sexual* harassment policy or the Fair Housing Act.

41.    Even if the police conducted an investigation into Plaintiff's assault,

this did not satisfy the Defendant's independent duty to investigate, correct, and

remedy the discrimination/harassment.  The standard for a criminal conviction is

"reasonable doubt," which is a much higher standard than the "preponderance of the evidence" standard applicable under the Fair Housing Act.

42. At no time did Defendant provide Plaintiff any information about the outcome or result of any investigation conducted by Defendant, and, upon information and belief, to Plaintiff's knowledge, no hearing was ever conducted by Defendant, at which Plaintiff could have addressed these matters.

43. Defendant intentionally discriminated against Plaintiff based on sex by unfairly disadvantaging or burdening Plaintiff, the harassee, instead of the harasser, in that Plaintiff moved out of the off-campus unit and back onto campus, and Defendant recalculated Plaintiff's financial aid package, which required Plaintiff to pay *more* for room and board for Spring Semester 2019, than for the off-campus housing unit in Fall Semester 2018. The move also caused Plaintiff to incur relocation expenses, out-of-pocket expenses, and suffer inconvenience. Upon information and belief, Mallon did *not* move out of the house.

44. Defendant is not fully LGBT-inclusive and intentionally discriminated against Plaintiff based on sex by permitting same-sex sexual harassment of Plaintiff because of his sexual orientation/gender stereotyping or because he is gay. Defendant subjected Plaintiff to disparate treatment based on sex as Defendant did not treat Plaintiff's complaints as seriously compared to a heterosexual female

student, if she would have complained of the same behavior, for example, by treating her complaint as one of sexual harassment.

**WHEREFORE**, Plaintiff, John Doe, hereby demands judgment in his favor and against Defendant, University of Scranton, including damages for any out-of-pocket expenses; the difference between the amounts Plaintiff paid to live on campus following the assault, as opposed to off-campus; compensatory damages for pain and suffering, mental anguish, anxiety, depression, humiliation, and emotional distress; punitive damages; pre- and post-judgment interest, reasonable attorneys' fees, costs of suit; and equitable/injunctive relief requiring that Defendant adopt, post, and disseminate a policy stating that, moving forward, all complaints of sexual-orientation discrimination will be processed as complaints of sex discrimination under the University's existing non-discrimination policy, whether the conduct occurred on or off-campus; and a policy stating that, moving forward, Defendant will first require or encourage the harasser, rather than the harassee, to move residences.

### COUNT V:
**DISCRIMINATION IN TERMS, CONDITIONS, AND PRIVILEGES RELATING TO THE PROVISION OF FACILITIES AND SERVICES, BASED ON SEXUAL ORIENTATION/GENDER STEREOTYPING, IN VIOLATION OF THE FAIR HOUSING ACT, TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968, AS AMENDED BY THE FAIR HOUSING AMENDMENTS ACT OF 1988, 42 U.S.C. § 3604(b) [Sec. 804(b)]**
**(Plaintiff, John Doe v. Defendant, University of Scranton)**

34

45.    All of the foregoing paragraphs are hereby incorporated by reference as if the same were more fully set forth at length herein.

46.    Defendant intentionally discriminated against Plaintiff based on sex by subjecting Plaintiff to different terms, conditions, or privileges relating to the rental of a dwelling, and/or denying or limiting the provision of facilities and services in connection therewith, on account of Plaintiff's sexual orientation/gender stereotyping.

47.    In the alternative, Defendant intentionally discriminated against Plaintiff based on sex by subjecting Plaintiff to different terms, conditions, or privileges relating to the rental of a dwelling, and/or denying or limiting the services or facilities in connection therewith, on account of Plaintiff's response to sexual orientation/gender stereotyping discrimination and harassment, and/or on account of the fact that Plaintiff was a victim of sexual orientation/gender stereotyping discrimination and harassment. The facts which support this are as follows:

a.    As a matter of policy, Defendant provides that Defendant will supply a "safe place" and "voice" for students who are LGBTQ+, "while holding true and dedicated to Catholic teaching . . . ." Defendant's policy and practice of not being fully LGBT-inclusive fosters a campus culture of bigotry, and a hostile environment as described more fully below.

35

b.   Defendant unfairly disadvantaged Plaintiff, the harassee, instead of the harasser, in that Plaintiff moved out of the off-campus unit and back onto campus, and Defendant recalculated Plaintiff's financial aid package, which required Plaintiff to pay more for room and board for Spring Semester 2019, than for the off-campus housing unit in Fall Semester 2018.  Upon information and belief, Mallon did not move out of the house.

c.   Plaintiff observed the assailant walking around campus, in the DeNaples Center, in the dining hall/cafeteria, and at the gym, thereafter.  Plaintiff regularly avoided the DeNaples Center, eating in the dining hall/cafeteria, and going to the gym, because he saw the assailant there, and out of fear Plaintiff would continue to encounter the assailant there moving forward.

d.   Even after a no-contact order was instituted between Plaintiff and the assailant, in or around February 2019, Plaintiff stated to Dean Rivera that Plaintiff continued to encounter the assailant around campus.  Plaintiff recalls saying, for example, that Plaintiff felt like he could not go to the gym because he did not know when the harasser would be there.  Dean Rivera stated to Plaintiff that there was nothing she could do about that.

36

e.      At no time did Defendant provide Plaintiff any information

about the outcome or result of any investigation conducted by

Defendant, and, upon information and belief, to Plaintiff's

knowledge, no hearing was ever conducted by Defendant, at

which Plaintiff could have addressed these matters.

**WHEREFORE**, Plaintiff, John Doe, hereby demands judgment in his favor

and against Defendant, University of Scranton, including damages for any out-of-

pocket expenses; the difference between the amounts Plaintiff paid to live on

campus following the assault, as opposed to off-campus; compensatory damages for

pain and suffering, mental anguish, anxiety, depression, humiliation, and emotional

distress; punitive damages; pre- and post-judgment interest, reasonable attorneys'

fees, costs of suit; and equitable/injunctive relief requiring that Defendant adopt,

post, and disseminate a policy stating that, moving forward, all complaints of

sexual-orientation discrimination will be processed as complaints of sex

discrimination under the University's Title IX grievance procedure; and a policy

stating that, moving forward, Defendant will first require or encourage the harasser,

rather than the harassee, to move residences.

## JURY DEMAND

Plaintiff, John Doe, requests a trial by jury, of eight (8) members, on all

counts so triable.

37

Respectfully submitted,

**THE LAW OFFICES OF ERIC A. SHORE, P.C.**

DATED: 8/27/19

JUSTIN F. ROBINETTE, ESQUIRE
Attorney I.D. No. 319829
THE LAW OFFICES OF ERIC A. SHORE, P.C.
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Phone: (215) 944-6121
Fax: (215) 944-6124
JustinR@EricShore.com

*Attorney for Plaintiff, John Doe*

38