**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN DOE,                                    No. 3:19-CV-01486

        Plaintiff.                      (Judge Brann)

    v.

UNIVERSITY OF SCRANTON,

        Defendant.

**MEMORANDUM OPINION**

**OCTOBER 9, 2020**

Presently before the court is the Defendant's motion to dismiss Plaintiff's Amended Complaint.[1] This motion, having been fully briefed, is ripe for disposition. For the reasons that follow, the Court will grant in part Defendant's motion.

## I.    BACKGROUND

On August 27, 2019, Plaintiff, John Doe, filed a Complaint against the sole Defendant in this case, the University of Scranton ("Defendant" or "University").[2] On December 9, 2019, Plaintiff filed an eleven-count Amended Complaint against Defendant, which stands as the operative pleading in this matter.[3]

The facts giving rise to this action stem from peer-on-peer harassment that Plaintiff allegedly endured based on his sexual orientation, gender stereotyping

---

[1]    Doc. 16.
[2]    Doc. 1.
[3]    Doc. 14.

and/or sex. Plaintiff alleges that, during the fall semester of 2018, he lived in an off-campus housing unit with four other male University students, including roommate Shawn Mallon ("Mallon").[4] Off-campus housing was only available to University students who had successfully completed an application process through the University's Office of Off-Campus and Commuter Student Life ("OCCSL") and received permission to live off-campus.[5] Plaintiff alleges that the OCCSL promulgated rules regarding the regulation of parties, activities, and student conduct that occurred off-campus, and had the authority to regulate off-campus housing.[6]

Plaintiff also asserts that Defendant had disciplinary authority or control over the students that lived, and student conduct issues that arose, off-campus.[7] Specifically, Plaintiff refers to Defendant's "Off Campus Conduct Policy" and "Off-Campus Behavior Policy," which delineated certain activities that could result in a student being referred to the Office of Student Conduct for disciplinary action.[8] Such activities included "excessive or unreasonable noise," "the illegal use of and/or sale or distribution of alcohol or drugs," "excessively large parties," "disrespect for neighbor and community," and "other disruptive behaviors." (*Id.*) Plaintiff also points to Defendant's Non-Discrimination and Anti-Harassment Policy, which

---

[4]   *Id.* at ¶ 24(c)-(d).
[5]   *Id.* at ¶¶ 9-10.
[6]   *Id.* at ¶ 11.
[7]   *Id.* at ¶ 12.
[8]   *Id.*

covered "off-campus conduct that has continuing adverse effects on campus, in the context of an education program or activity, or where the conduct has the potential to adversely affect any member of the University of Scranton Community."[9]

Shortly after Plaintiff moved into the off-campus residence, Mallon began to make homophobic remarks.[10] For example, Plaintiff alleges that Mallon frequently commented that other male students either were gay or looked gay, and generally made statements like "that's gay."[11] On an unspecified date, in response to one such statement, Plaintiff revealed to Mallon that he was gay.[12] Thereafter, Mallon frequently ostracized Plaintiff and spoke down to him, as the only openly gay roommate in the house, in a denigrating matter.[13] Mallon also allegedly emphasized Plaintiff's homosexuality, or the fact that he didn't intimately associate with members of the opposite sex, to alienate him and embarrass him in front of other University students.[14]

On November 1, 2018, Mallon allegedly sent an offensive group text message that referenced a sexual encounter between Plaintiff and his ex-boyfriend.[15] Plaintiff subsequently complained to Ms. Karen Marx ("Ms. Marx"), an administrative

---

[9]  *Id.* at ¶ 14.
[10]  *Id.* at ¶ 24 (d).
[11]  *Id.*
[12]  *Id.* at¶ 24(e).
[13]  *Id.* at ¶ 24(f).
[14]  *Id.* at ¶ 24(h).
[15]  *Id.* at ¶ 24(j).

assistant at the University's Academic Advising Center, about his living situation.[16] According to Plaintiff, his complaint was not taken seriously; Ms. Marx merely indicated that some people might take issue with Plaintiff's homosexuality and then said something to the effect of "you only have to live with [Mallon] one more semester after this."[17] Plaintiff also took his complaint to Mr. Kevin Stanford, an academic advisor at the University, who similarly dismissed Plaintiff's concerns and declined to take any disciplinary action against Mallon.[18]

Plaintiff alleges that he continued to experience harassment, which culminated in Mallon physically attacking him on or about December 15, 2018 (the "Attack").[19] During the Attack, Plaintiff asserts that Mallon referred to him as a "faggot" and threatened his life.[20] Plaintiff alerted both the campus police and the University's Dean of Students, Lauren Rivera ("Dean Rivera"), about the Attack.[21] Plaintiff also lodged a complaint with Dean Rivera regarding the discrimination, harassment, and physical confrontation that he experienced because of his sexual orientation.[22] Although Defendant processed Plaintiff's complaint as a possible violation of the University's community standards of behavior, it declined to find

---

[16]  *Id.* at ¶ 24(k).
[17]  *Id.*
[18]  *Id.* at ¶ 24(l)-(m).
[19]  *Id.* at ¶ 24(p).
[20]  *Id.*
[21]  *Id.* at ¶ 27.
[22]  *Id.*

that the aggrieved of conduct violated the University's sexual harassment policy or Title IX policy.[23] Plaintiff claims that Defendant's response was unsatisfactory, insofar as it failed to apprise him of the outcome of any investigations and expressly deviated from the procedures outlined in its own Sexual Harassment and Sexual Misconduct policies.[24]

Plaintiff further claims that he, instead of his alleged harasser, moved out of the off-campus residence and back onto campus.[25] Although Defendant implemented a no-contact order between Plaintiff and Mallon in or around February 2019, Plaintiff complained to Dean Rivera that he continued to encounter his former roommate on campus.[26] Plaintiff asserts that he regularly avoided the DeNaples Student Center, dining hall and cafeteria, and gym out of fear that he would encounter Mallon.[27] Plaintiff further alleges that he experienced ongoing emotional distress based on the harassment that he suffered, which not only impaired his higher education experience but also his psychological well-being.[28]

---

[23]   *Id.* at ¶ 29.
[24]   *Id.* at ¶¶ 30, 34.
[25]   *Id.* at ¶ 36.
[26]   *Id.* at ¶ 33.
[27]   *Id.* at ¶ 32.
[28]   *Id.* at 18, ¶ 37.

On December 23, 2019, Defendant filed a motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[29] The matter is now ripe for disposition.

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted." A motion to dismiss "tests the legal sufficiency of a pleading"[30] and "streamlines litigation by dispensing with needless discovery and factfinding."[31] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[32] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[33]

Following the Roberts Court's "civil procedure revival,"[34] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[35] and *Ashcroft v. Iqbal*[36] tightened the standard that district courts must apply to 12(b)(6) motions.[37]   These cases

---

[29]  Doc. 16.

[30]  *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[31]  *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[32]  *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[33]  *Neitzke*, 490 U.S. at 327.

[34]  Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[35]  550 U.S. 544 (2007).

[36]  556 U.S. 662, 678 (2009).

[37]  *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

"retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[38]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[39] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[40] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[41] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[42]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[43] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

---

[38]   *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[39]   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[40]   *Iqbal*, 556 U.S. at 678.
[41]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).
[42]   *Twombly*, 550 U.S. at 556.
[43]   *Iqbal*, 556 U.S. at 679.

plausibility of entitlement to relief.'"[44]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[45] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[46] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[47]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[48]

## III.   ANALYSIS

Defendant raises the following issues in its motion to dismiss: (1) whether Counts I and II of the Amended Complaint, brought against Defendants under Title

---

[44]   *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[45]   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[46]   *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[47]   *Iqbal*, 556 U.S. at 678.

[48]   *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

IX of the Education Amendments of 1972,[49] should be dismissed with prejudice for failure to state a claim; (2) whether Counts III and IV, which raise purported violations of the Pennsylvania Human Relations Act ("PHRA")[50], and Counts V and VII, which raise purported violations of the Pennsylvania Fair Educational Opportunities Act ("PFEOA")[51], should be dismissed with prejudice for failure to state a claim; (3) whether Counts VII and VIII, brought under the City of Scranton Human Relations and Discrimination Ordinance,[52] should be dismissed with prejudice for failure to state a claim; (4) whether Counts IX and X, brought against Defendants under Section 3604(b) of the Fair Housing Act ("FHA")[53], should be dismissed with prejudice for failure to state a claim; (5) whether Count XI, brought under Section 3617 of the FHA[54], should be dismissed with prejudice for failure to state a claim; and (6) whether Plaintiff's claim for punitive damages in connection with his FHA Claims should be stricken. The Court will address each issue in turn.

### A.    Counts I and II (Title IX Claims)

In Counts I and II of the Amended Complaint, Plaintiff alleges that Defendant displayed deliberate indifference to his reports of peer-on-peer harassment, and responded to the Attack in a discriminatory manner, based on his "sexual orientation,

---

[49]  20 U.S.C. § 1681, et seq.
[50]  43 P.S. § 951, et seq.
[51]  24 P.S. § 5001, et seq.
[52]  Chapter 296 of the Code of the City of Scranton.
[53]  Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3604(b).
[54]  Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3617.

gender stereotyping, and/or sex" in violation of Title IX.[55] Defendant argues that these counts should be dismissed for failure to state a viable Title IX claim.[56]

Title IX provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[57] For the purposes of Title IX, a school's deliberate indifference to student-on-student harassment can constitute actionable sex discrimination under "certain limited circumstances . . . ."[58] Specifically, to hold an educational institution liable for student-on-student harassment under Title IX, a plaintiff must establish the following:

> (1) the defendant receives federal funds; (2) sexual [or racial] harassment occurred; (3) the harassment occurred under "circumstances wherein the recipient exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red],"; (4) the School [] had "actual knowledge" of the harassment; (5) the School [] was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have] deprive[d] the victims of access to the educational opportunities or benefits provided by the school.[59]

---

[55] Doc. 14 at ¶¶ 21-39.
[56] Doc. 19 at 17-34.
[57] 20 U.S.C. § 1681(a).
[58] *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 643, 650 (1999); *see also Brooks v. City of Philadelphia*, 747 F. Supp. 2d 477, 482 (E.D. Pa. 2010) (noting that *Davis* did not expand Title IX to hold school boards liable for a student's conduct, but rather sought "to hold the Board liable for its own decision to remain idle in the face of known student-on-student harassment in its schools."); *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 205 (3d Cir. 2001) (noting that peer-on-peer harassment claims, in essence, involve the creation of a "hostile [educational] environment" under Title IX).
[59] *Brooks*, 747 F. Supp. 2d at 481 (ellipsis omitted).

10

Significantly, "[d]amages are not available [against a school] for simple acts of teasing and name-calling among school children, even where these comments target differences in gender"; rather, the known acts of harassment must have "a systemic effect on educational programs and activities."[60]

In support of dismissal, Defendant asserts that Plaintiff failed to allege that it exercised "substantial control" over the purported harasser and the off-campus residence where the harassment occurred. Defendant also submits that it lacked actual knowledge of Plaintiff's harassment prior to his Attack, as Plaintiff did not sufficiently allege that he notified "appropriate persons" of his complaints. Defendant further contends that Plaintiff failed to establish that it was deliberately indifferent to his reports of student-on-student harassment either before or after the Attack, or that the harassment of which Plaintiff complained was "so severe, pervasive, and objectively offensive" that it deprived him of access to educational opportunities or benefits.[61] Plaintiff contests each of Defendant's assertions and argues that Counts I and II should proceed to discovery.

---

[60]   *Saxe*, 240 F. 3d at 206 (quoting *Davis*, 526 U.S. at 633, 652).

[61]   Defendant does not appear to challenge whether Plaintiff has plausibly alleged the first element of a Title IX claim, that is whether Defendant receives federal funds. *See Davis*, 526 U.S. at 644-45, 650. With respect to the second element, however, Defendant notes that the United States Court of Appeals for the Third Circuit has not yet expressly held that discrimination based on sexual orientation is actionable under Title IX. (Doc. 19 at 2 n.1). Plaintiff responds that Title IX contemplates peer-on-peer harassment on the basis of sexual orientation as a form of gender-based stereotyping. (Doc. 22 at 2). Recently, the United States Supreme Court addressed a similar argument in the context of Title VII, 42 U.S.C. § 2000e-2(a)(1) and explained that "it is impossible to discriminate against a person for being homosexual or

### 1.     Whether Plaintiff has plausibly alleged that Defendant, or an "appropriate person" for the purposes of Title IX, was deliberately indifferent to any known reports of harassment or discrimination.

First, Defendant contends that Plaintiff has failed to establish that it displayed deliberate indifference to his complaints of harassment either before or after the Attack. Specifically, Defendant asserts that Plaintiff has not pleaded facts that demonstrated an appropriate University official had actual knowledge of the harassment that he experienced or was deliberately indifferent in its response to Plaintiff's reports.[62] Plaintiff responds that his Title IX claims primarily focus on Defendant's failure to take meaningful action upon receiving Plaintiff's initial

---

transgender without discriminating against that individual based on sex." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1741 (2020). Although Title VII involves a separate provision of the Civil Rights Act of 1964, several courts from sister circuits have extended the Supreme Court's reasoning in *Bostock* to discrimination claims based on sexual orientation brought under Title IX. *See Grimm v. Gloucester County School Board*, -- F.3d --, 2020 WL 5034430, at *21 (4th Cir. Aug. 26, 2020) (noting that *Bostock* "guides [the court's] evaluation of claims under Title IX"); *Adams by & through Kasper v. Sch. Bd. of St. Johns Cty.*, 968 F.3d 1286, 1296 (11th Cir. 2020) (finding that *Bostock's* interpretation of Title VI applied to discrimination claims based on an individual's transgender status under Title IX); *see also D.V. by & through B.V. v. Pennsauken Sch. Dist.*, 247 F. Supp. 3d 464, 476 (D.N.J. 2017) (holding that sex discrimination claim based on sexual orientation is viable under Title IX, which "encompasses same-sex sexual harassment"); *Harrington by Harrington v. City of Attleboro*, No. 15-CV-12769-DJC, 2018 WL 475000, at *5 (D. Mass. Jan. 17, 2018) ("Actionable sex stereotypes [under Title IX] include those based on sexual orientation."); *Videckis v. Pepperdine Univ.*, 150 F. Supp. 3d 1151, 1160 (C.D. Cal. 2015) ("[T]o allege discrimination on the basis of sexuality is to state a Title IX claim on the basis of sex or gender."). Thus, in the absence of express Third Circuit precedent to the contrary, the Court finds Plaintiff's argument to be persuasive.

[62]   Doc. 19 at 19.

complaints of harassment,[63] which ultimately subjected him to further discrimination and culminated in the Attack.[64]

In the context of student-on-student harassment, Title IX liability will not attach unless an educational institution's "deliberate indifference 'subject[s]' its students to harassment."[65] At a minimum, this requires that the acts of an educational institution "cause students to undergo harassment or make [them] liable or vulnerable to it."[66] Further, to amount to deliberate indifference, an educational institution's response to reports of peer-on-peer harassment must be "clearly unreasonable in light of the known circumstances."[67] However, failing "to react to . . . harassment of which it . . . *should have known*," rather than harassment of which it had actual knowledge, does not give rise to Title IX liability.[68]

Title IX also affords educational institutions and school administrators with "substantial deference in cases of alleged student-on-student harassment."[69] For example, student victims of harassment are not entitled "to make particular remedial demands," nor is the "funding recipient . . . required to 'engage in [a] particular

---

[63] As Plaintiff clarifies that his Title IX claims are grounded in Defendant's alleged response to his pre-Attack conduct, the Court declines to consider whether Defendant demonstrated deliberate indifference to Plaintiff's post-Attack complaints.

[64] Doc. 22 at 5-7.

[65] *Davis,* 526 U.S. at 644.

[66] *Id*. at 645.

[67] *Id.* at 648; *see also Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017).

[68] *Davis*, 526 U.S. at 642.

[69] *Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 369 (W.D. Pa. 2008).

disciplinary action.'"[70] Additionally, "[t]he fact that the appropriate person's initial response does not remedy or prevent the harassment . . . does not provide sufficient grounds for [Title IX] liability."[71]

Based on the standards delineated above, the Court now considers whether Plaintiff has plausibly alleged that Defendant had actual knowledge of his pre-Attack complaints and responded to them in a clearly unreasonable manner. Plaintiff argues that Defendant acted with deliberate indifference when Ms. Marx did nothing in response to his complaints of sexual orientation and gender-based harassment leading up to the Attack.[72] Indeed, instead of taking remedial action, Ms. Marx allegedly told Plaintiff that he need only tolerate one more semester of living with his purported harasser.[73] When Plaintiff similarly reported his complaints to Mr. Stanford up the chain of command, he allegedly instructed Plaintiff to not let his roommate's conduct "get to [him]."[74]

---

[70] *Id.* (quoting *Davis*, 526 U.S. at 648); *see also Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 145 (2d Cir. 1999) (noting that deliberate indifference "does not depend on whether one can plausibly second guess the disciplinary decisions made by school administrators.") (citations omitted); *D.V. by & through B.V. v. Pennsauken Sch. Dist.*, 247 F. Supp. 3d 464, 477 (D.N.J. 2017) (noting that a plaintiff's dissatisfaction with a school district's investigation is not dispositive of whether a Title IX violation took place).

[71] *Swanger v. Warrior Run Sch. Dist.*, 346 F. Supp. 3d 689, 705-06 (M.D. Pa. 2018) (citing *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001)); *see also Brooks v. City of Philadelphia*, 747 F. Supp. 2d 477, 482 (E.D. Pa. 2010) (noting that a funding recipient is not required to "'remedy' peer harassment and to 'ensure that . . . students conform their conduct to certain rules.'") (citations omitted)).

[72] Doc. 22 at 5.

[73] Doc. 14 at ¶ 24(k).

[74] *Id.* at ¶ 24(m).

When taken as true and read in the light most favorable to Plaintiff, one could reasonably infer that the alleged inaction of Ms. Marx and Mr. Stanford was clearly unreasonable and made Plaintiff vulnerable to further acts of harassment by his roommate.[75] The Court also agrees with Defendants that the allegations are insufficient to establish that either Ms. Marx or Mr. Stanford is an "appropriate person" in the context of Title IX. Nevertheless, this is not fatal to Plaintiff's claims.

The Supreme Court has indicated that "the express remedial scheme under Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation."[76] In this context, an "'appropriate person' . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination."[77] The Third Circuit has further held that an individual is not considered an appropriate person "solely by virtue of their position."[78] Rather, such a designation depends on the individual's actual authority to end the discrimination at issue.[79]

The Amended Complaint alleges that, pursuant to University policy, Ms. Marx and Mr. Stanford were required to report allegations of sexual harassment to Defendant's Title IX Coordinator.[80] Based on their status as "required reporters,"

---

[75]   *Davis*, 526 U.S. at 645.

[76]   *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

[77]   *Id.*

[78]   *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 360 (3d Cir. 2005).

[79]   *Warren ex rel. Good v. Reading School Dist.*, 278 F.3d 163, 172 (3d Cir. 2002).

[80]   Doc. 14 at ¶ 19.

Plaintiff asserts that they were empowered to act under Title IX's administrative scheme.[81] Plaintiff thus claims that Defendant should be held liable under Title IX for Ms. Marx's and Mr. Stanford's failure to act when they had the ability to do so.[82] Plaintiff additionally argues that whether Ms. Marx or Mr. Stanford had any further authority to institute corrective or disciplinary measures is a fact-intensive inquiry that should proceed to discovery.[83]

Defendant argues that Plaintiff failed to allege that he complained to an "appropriate person" of his roommate's harassing conduct prior to the Attack.[84] Defendant also contends that Ms. Marx and Mr. Stanford were not authorized to take corrective action on behalf of the University as required for the purposes of Title IX.[85] As such, Defendant asserts that it lacked "actual knowledge" of any alleged harassment until after the off-campus Attack occurred.[86]

Upon careful review of the complaint, the Court agrees with Defendant that neither Ms. Marx nor Mr. Stanford were "appropriate persons," as the complaint fails to allege that either individual had the power to take corrective action to end the harassment. However, the complaint alleges that Defendant "has a 'Required Reporter Statement' in its Sexual Harassment Policy . . . stating that 'University

---

[81] Doc. 22 at 14.
[82] *Id.* at 7.
[83] *Id.* at 13-14.
[84] Doc. 19 at 23-26.
[85] *Id.* at 25.
[86] *Id.* at 22.

policy provides that every employee' . . . includ[ing] Ms. Marx [and] Mr. Stanford . . . who receives any report of sexual harassment, is required to share the report with the Title IX Coordinator."[87]

Assuming this to be true, and drawing all reasonable inferences from that fact,[88] it is reasonable to conclude that the alleged harassment was in fact reported to an individual who had the power to stop the alleged harassment. That is to say, based on the allegation that both Ms. Marx and Mr. Stanford were *required* to report the alleged sexual harassment to the Title IX Coordinator—an individual who indisputably had the power to take corrective action—it is reasonable to infer that Plaintiff's reports were indeed provided to an appropriate person.[89] Thus, Plaintiff not only adequately averred—although just barely—that the alleged harassment was reported to an appropriate person, but he has also alleged that Defendant had actual knowledge of the pre-Attack harassment that he reported to Ms. Marx and Mr. Mallon.[90]

---

[87]   Doc. 14 at ¶ 19.

[88]   *Phillips*, 515 F.3d at 228.

[89]   Later paragraphs in the complaint may be read as contradicting this conclusion. For example, in Paragraph 77(m) of the amended complaint, Plaintiff asserts that "[n]either Ms. Marx nor Mr. Stanford took any disciplinary action against the harasser nor made any effort whatsoever to put an end to the harassment at the above times." This could be read as stating that Ms. Marx and Mr. Stanford violated their reporting duties and did not report the harassment to the Title IX Coordinator, or that they took no further direct, personal action to stop the harassment— aside from reporting the complaint to the Title IX Coordinator. This must be clarified in a second amended complaint, should Plaintiff choose to file one.

[90]   *See Davis*, 526 U.S. at 644.

### 2. Whether Plaintiff has Alleged that Defendant Exercised "Substantial Control" Over the Alleged Harasser

Nevertheless, Plaintiff's Title IX claims are still subject to dismissal, as he failed to allege that Defendant exercised "substantial control" over the alleged harasser. For student-on-student harassment to be actionable against an educational institution, "the harassment must take place in a context subject to the [university's] control."[91] "Only then can the [university] be said to 'expose' its students to harassment or 'cause' them to undergo it 'under' the [university's] programs."[92] Generally, when "the misconduct occurs during school hours and on school grounds . . . the misconduct is taking place 'under' an 'operation' of the [university]."[93]

Defendant argues that it cannot be held liable for the alleged harassment Plaintiff experienced, as it "had no ability or obligation to control what happened in [Plaintiff's] off-campus apartment."[94] Plaintiff responds that Defendant had substantial control over the off-campus residence because it retained disciplinary authority over his alleged harasser.[95]

Here, the Amended Complaint alleges that Defendant had the ability to refer students for disciplinary action based on off-campus conduct that violated the

---

[91] *Id.* at 645.
[92] *Id.*
[93] *Id.* at 646.
[94] Doc. 19 at 30.
[95] Doc. 22 at 8-12.

student code of conduct and had a continuing impact on campus life.[96] The Amended Complaint also alleges that Defendant regulated off-campus housing insofar as it required that students receive permission to live off-campus, room with other University students, and adhere to off-campus housing policies and behavioral standards that the OCCSL established.[97] The Amended Complaint does not allege, however, that Mallon's harassment took place on-campus, during school hours, or in connection with a University event or setting.[98] Further, Plaintiff does not plausibly aver that imposing certain conditions on a student's ability to live off-campus necessarily transformed private, off-campus residences into settings under Defendant's substantial control.[99]

---

[96]   Doc. 14 at ¶¶ 12, 14.

[97]   *Id.* at ¶¶ 9-10, 24(c)-(d).

[98]   *Cf. Davis,* 526 U.S. at 646; *see also Williams v. Pennridge Sch. Dist.*, No. CV 15-4163, 2018 WL 6413314, at *7 (E.D. Pa. Dec. 6, 2018), *aff'd*, 782 F. App'x 120 (3d Cir. 2019) (explaining how several courts have held that "harassment that takes place off of school grounds and/or outside of school hours does not occur under circumstances where the District exercised substantial control over either the harasser or the context in which the harassment occurred.").

[99]   *See Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1132 (D. Or. 2016), *aff'd,* 725 F. App'x 598 (9th Cir. 2018) (holding that university defendant lacked control over the context in which an alleged sexual assault occurred, as the attack took-place in an off-campus apartment where the defendant could not exert control "over the comings and goings of students or guests"); *Farmer v. Kansas State Univ.*, No. 16-CV-2256-JAR-GEB, 2017 WL 980460, at *9 (D. Kan. Mar. 14, 2017), *aff'd,* 918 F.3d 1094 (10th Cir. 2019) ("[P]eer sexual assaults that occur off-campus, in private settings, and within contexts that have little or no connection to the funding recipient do not trigger Title IX liability."). *Cf. Weckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154, 1168 (D. Kan. 2017), *aff'd sub nom. Farmer v. Kansas State Univ.*, 918 F.3d 1094 (10th Cir. 2019) (holding that off-campus fraternity house where alleged sexual assault occurred was essentially an "operation" of the university, and therefore subject to the university's substantial control).

This is not to say that simply because Plaintiff lived off-campus that his housing complex was not subject to substantial control from Defendant. For example, in *Weckhorst v. Kansas State University*, the court determined that the plaintiff had alleged sufficient facts to establish that the university had substantial control over an off-campus fraternity house.[100] These included allegations that: (1) the fraternity was "open only to [university] students" and were described "as 'Kansas State University Organizations'"; (2) the director of the fraternity was a university instructor; (3) the university "promote[d] its fraternities on its website and to prospective students and parents"; (4) the university carried "out a number of functions to support fraternities and sororities, including administrative assistance, advisory responsibilities, education and development, serving as a liaison to chapter presidents, holding regular meetings with chapters, and conducting chapter assessments"; (5) the university regulated fraternity houses and "promulgate[d] rules for regulating parties and certain other activities at fraternity houses and events"; and (6) the university "suspend[ed] the fraternity for the alcohol at the party at which Plaintiff was raped."[101]

In contrast, here, the complaint is lacking certain details that could establish that Defendant had substantial control over the off-campus apartments. While the amended complaint avers that "[o]ff-campus student housing of the type provided

---

[100]  241 F. Supp. 3d at 1167.
[101]  *Id.*

to Plaintiff and the student-harasser is open only to University students,"[102] the amended complaint does not explain the relationship between Defendant and the off-campus housing unit. The complaint does not detail whether Defendant regulates the off-campus housing in any way, whether it exercises any control over the housing complex or its owner by, for example, inspecting the housing or mandating certain conditions of housing, or whether Defendant must approve housing choices for students before they may occupy a housing unit. Absent any indication that Defendant exercises substantial control over the off-campus housing in which Plaintiff lived, the amended complaint fails to state a valid Title IX claim.

Consequently, although the Court concludes that Plaintiff's allegations are insufficient to sustain a claimed violation of Title IX, he will be granted leave to file a second amended complaint. Should he choose to file such a complaint, he must not only clarify the issue noted above in footnote 89, but must also allege sufficient facts to establish that his off-campus housing was subject to substantial control from Defendant.[103]

---

[102]  Doc. 14 at ¶ 9.

[103]  As it would not impact the Court's ultimate conclusion, the Court declines to consider whether Plaintiff has also sufficiently pleaded that his roommate's pre-Attack harassment was severe and pervasive.

**B.     Counts IX and X (Title VIII Claims Brought Under 42 U.S.C. § 3604(b))**

In the amended complaint, Plaintiff also raises claims against Defendant under the Fair Housing Act (FHA). Specifically, in Counts IX and X, Plaintiff alleges that Defendant subjected him to a hostile environment, harassment and discrimination based on his sexual orientation and gender in violation of 42 U.S.C. § 3604(b).[104] Plaintiff further asserts that Defendant unfairly disadvantaged him insofar as he, instead of his alleged harasser, moved out of the off-campus residence and incurred additional costs associated with relocation and on-campus housing.[105] Defendant argues that, because it neither provided Plaintiff with the off-campus dwelling where the alleged harassment occurred nor controlled any services and facilities associated therewith, it is not subject to liability under Section 3604(b).[106]

At issue then is whether Plaintiff has sufficiently pleaded that the FHA applies to the Defendant. The FHA provides in relevant part that it is unlawful "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex . . . ."[107] Notably, this provision "refers not just to the sale or rental itself, but to certain benefits or protections flowing from and following

---

[104]  Doc. 14 at ¶¶ 93-107.
[105]  *Id*. at ¶ 104.
[106]  Doc. 19, at 39-40.
[107]  42 U.S.C.A. § 3604(b).

the sale or rental."[108] Accordingly, several courts from sister circuits have held that Section 3604(b) extends to post-acquisition conduct and imposes a duty "not to permit *known* harassment on *protected* grounds."[109]

Plaintiff argues that, since Defendant exercised "substantial control" over the off-campus residence for the purposes of Title IX, Defendant is subject to the provisions of the FHA.[110] However, even when taken as true, the "terms, conditions, and privileges of sale or rental" as contemplated under Section 3604(b) generally "relate to the contract between the buyer and seller, or the lessor and lessee."[111] Based on the facts set forth in the Amended Complaint, the Court is not convinced that Plaintiff has plausibly alleged that Defendant, as either an off-campus housing provider or third-party provider of related services,[112] permitted known

---

[108] *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 376 (2d Cir. 2019), *reh'g en banc granted*, 949 F.3d 67 (2d Cir. 2020).

[109] *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 864 (7th Cir. 2018), *cert. dismissed sub nom. Glen St. Andrew Living Com. v. Wetzel*, 139 S. Ct. 1249, 203 L. Ed. 2d 269 (2019) (emphasis in original); *see also Francis*, 944 F.3d at 377 (holding that § 3604(b) applies to conduct that "'would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling' after acquisition.") (citations omitted); *Georgia State Conference of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627, 632–33 (11th Cir. 2019) (holding that "§ 3604(b) is unambiguous and reaches certain post-acquisition conduct, including post-acquisition conduct related to the provision of services, as long as those services are connected to the sale or rental of a dwelling."); *Honce v. Vigil*, 1 F.3d 1085, 1088–90 (10th Cir. 1993) (holding that a hostile housing environment claim is actionable under § 3604(b) "when the offensive behavior unreasonably interferes with use and enjoyment of the premises" and is "sufficiently severe or pervasive to alter the conditions of the housing arrangement" (quotation marks omitted)).

[110] Doc. 22 at 16-17.

[111] *Edwards v. Media Borough Council*, 430 F. Supp. 2d 445, 452 (E.D. Pa. 2006).

[112] *See Georgia State Conference of the NAACP v. City of LaGrange, Georgia*, 940 F.3d 627, 635 (11th Cir. 2019) (holding that § 3604(b) "is not limited in application only to housing providers, but extends to third-party providers of services connected to housing.").

discriminatory harassment to occur in an off-campus setting over which it exercised control.[113] While the Court does not go so far as to hold universities like Defendant are entirely insulated from liability under the FHA, Plaintiff's Section 3604(b) claims do not survive dismissal here.

For these reasons, Defendant's motion to dismiss will be granted as to Counts IX and X of the Amended Complaint for failure to state a claim under the FHA.

### C.    Count XI (Title XIII Claims Brought Under 42 U.S.C. § 3617)

Plaintiff additionally alleges in Count XI of the Amended Complaint that Defendant engaged in interference, coercion, and intimation, in violation of 42 U.S.C. § 3617, based on its unsatisfactory response to his attack and the fact that his on-campus move was not "completely voluntary."[114] Defendant argues that this claim should be dismissed, as Plaintiff has failed to allege a pattern of harassment that was sufficiently severe or pervasive to support such a claim.[115]

Section 3617 of the FHA makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 .

---

[113]  *See D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 366–67 (S.D.N.Y. 2017) (noting that § 3604(b) prohibits "the creation of a 'hostile environment' by individuals who have control or authority over the 'terms, conditions, or privileges of sale or rental of a dwelling,' similar to the prohibition imposed by Title VII against the creation of a hostile work environment.") (quoting *Francis*, 91 F. Supp. 3d at 420).
[114]  Doc. 14 at ¶¶ 108-18.
[115]  Doc. 19 at 44-46.

. . of this title."[116] Similar to claims brought under Section 3604(b), a Section 3617 claim "may arise before or . . . after a plaintiff acquires housing."[117] To state an interference claim, the Plaintiff must allege: "that (1) [he] is a protected individual under the FHA, (2) [he] was engaged in the exercise or enjoyment of [his] fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of [his] protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate."[118] The term "interference," as contemplated under Section 3617, is "'broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws.'"[119]

Here, Plaintiff asserts that Defendant violated Section 3617 by "threatening, intimidating, or interfering with" Plaintiff in his enjoyment of a dwelling based on his sex.[120] Plaintiff alleges that, but for the harassment and intimidation he experienced, he would not have moved out of the off-campus residence.[121] Plaintiff further argues that his choice to move back on-campus was not "completely

---

[116] 42 U.S.C. § 3617.

[117] *Revock v. Cowpet Bay W. Condo. Ass'n*, 853 F.3d 96, 112 (3d Cir. 2017).

[118] *El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 842 (E.D. Pa. 2018) (citing *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009)).

[119] *Revock*, 853 F.3d at 113 (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001)).

[120] Doc. 14 ¶ 109.

[121] *Id.* at ¶ 118.

voluntary," as Defendant purportedly put him in the position that compelled his move.[122]

When construed in the light most favorable to Plaintiff, these allegations do not successfully make out a claim under Section 3617.  Specifically, Plaintiff's decision to move on-campus following the Attack does not provide a plausible basis for the Court to infer that Defendant somehow interfered with his ability to live-off campus. Additionally, insofar as Plaintiff may assert that Defendant violated Section 3617 based on its failure to discipline Shawn Mallon for his continued off-campus harassment that ultimately escalated in the Attack, Plaintiff's claim is similarly unavailing. Simply stated, if Defendant was unaware of the purported acts of tenant-on-tenant harassment leading up to the Attack, as discussed *supra*, it then it did not intentionally subject Plaintiff "to conduct that the FHA forbids" based on his sex or sexual orientation.[123]

For these reasons, the Court will grant Defendant's motion to dismiss Plaintiff's Section 3617 claim.

---

[122] *Id.*

[123] *Cf. Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 379 (2d Cir. 2019), *reh'g en banc granted*, 949 F.3d 67 (2d Cir. 2020) (holding that Section 3617 claim survived dismissal when plaintiff plausibly alleged that defendants were actually aware of ongoing acts of tenant-on-tenant harassment and discriminated against him by "tolerating and/or facilitating a hostile environment" despite their authority to intervene).

**D.     Plaintiff's claims for punitive damages**

Next, Defendant moves to dismiss Plaintiff's claims for punitive damages in connection with his Fair Housing Act claims brought under Sections 3604(b) and 3617.[124] Punitive damages are appropriate in fair housing cases "if the court finds that a discriminatory housing practice has occurred or is about to occur[.]"[125] As discussed above, Plaintiff's FHA claims do not survive dismissal. Therefore, the Court will grant Defendant's motion to dismiss Plaintiff's request for punitive damages.

**E.     Counts III and IV (State law claims brought under the PHRA), Counts V and VI (State law claims brought under the PFEOA) and Counts VII and VIII (State law claims brought under the City of Scranton Human Relations and Discrimination Ordinance)**

Finally, Defendant moves for dismissal of Plaintiff's state law claims brought against Defendant under the PHRA, the PFEOA, and the Scranton Human Relations and Discrimination Ordinance for failure to state a claim upon which relief can be granted.[126] As the Court has previously dismissed Plaintiff's claims brought under Title IX and the FHA, however, the Court now considers whether the exercise of supplemental jurisdiction over Plaintiff's remaining state law claims is appropriate.

Title 28 of the United States Code, Section 1367 governs jurisdiction over supplemental state law claims brought in federal court. Specifically, Section

---

[124]  Doc. 19 at 46-48.
[125]  42 U.S.C. § 3613(c)(1).
[126]  Doc. 19 at 34-39.

1367(a) states that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[127] This exercise of supplemental jurisdiction may be declined, however, if a court "has dismissed all claims over which it has original jurisdiction."[128] Furthermore, the Third Circuit has recognized that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."[129]

As discussed above, Plaintiff has failed to plead plausible claims under Title IX and the FHA over which this Court would have original jurisdiction. In accordance with the directives of the Third Circuit, the Court finds that there exists no affirmative justification to exercise supplemental jurisdiction over the instant state law claims. Therefore, the Court declines to consider Defendant's arguments under Rule 12(b)(6) and will dismiss Plaintiff's state law claims under the PHRA, PFEOA, and the City of Scranton Human Relations and Discrimination Ordinance

---

[127] 28 U.S.C. § 1367(a).

[128] *Id.* at § 1367(c)(3).

[129] *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (citing *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

without prejudice to Plaintiff re-filing these claims in state court.[130] Should Plaintiff file a second amended complaint, and should that amendment adequately state a Title IX claim, the Court will revisit this determination.

### F.    Leave to Amend

Having carefully considered the claims set forth in the amended complaint, Plaintiff will be granted leave to file a second amended complaint. The Third Circuit has directed that, when a complaint is vulnerable to dismissal under Rule 12(b)(6), a court "must permit a curative amendment unless such an amendment would be inequitable or futile."[131]  The Third Circuit has also stated that:

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.[132]

With respect to futility, the Third Circuit has sanctioned denial of leave to amend "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."[133] In this case, the factual and legal deficiencies explained above cannot be cured as to Counts IX, X, and XI, and those claims will therefore be dismissed with prejudice. However, Plaintiff may

---

[130]  *See* 28 U.S.C. § 1367(d) (providing for at least a thirty-day tolling of any applicable statute of limitation to allow a plaintiff time to re-file state-law claims in state court).
[131]  *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).
[132]  *Id.*
[133]  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

plausibly state a claim for Counts I and II, and dismissal of those claims is without prejudice, as is dismissal of Plaintiff's state law claims.

## IV.    CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss the amended complaint is granted in part. Counts IX, X, and XI are dismissed with prejudice, while Counts I and II are dismissed without prejudice. The Court also declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and those claims are dismissed without prejudice to Plaintiff re-filing Counts III, IV, V, VI, VII and VIII in state court, or in this Court should Plaintiff amend his complaint to adequately state a claim for a violation of Title IX.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge